08CV3772

## JUDGE GOTTSCHALL
## MAG.JUDGE MASON

**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

JUN 3 0 2008 aew
Jun 30 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| Vs. | § | Criminal No. 98Cr208-JBG |
| DeMARCO WILLIAMS, | § | |
| Defendant./ | § | |

U.S.C.A. — 7th Circuit
RECEIVED
JUN 3 0 2008 EF
GINO J. AGNELLO
CLERK

### PETITION TO VACATE, SET ASIDE OR CORRECT SENTENCE AT 28, U.S.C. § 2255 OR ALTERNATIVELY A MOTION FOR RELIEF FROM JUDGMENT AT F.R.CIV.P. 60(B)(6) AND/OR WITHDRAWAL OF GUILTY PLEA AT RULE 11, 18 U.S.C.

**COMES NOW**, DeMarco Williams, appearing pro se("herein known as 'Defendant'), respectfully moving to set aside, vacate or correct his sentence under 28, USC §2255, or alternatively he moves pursuant to F.R.Civ.P. 60(b)(6) seeking relief from his judgment and/or withdrawal of his guilty plea at 18, USC, Rule 11.

Parites

1. Defendant Demarco Williams, is a federal prisoner incarcerated in the United States Penitentiary, Marion, Ill. 62959.

2. The Plaintiff is the United States of America.

Jurisdiction

3. Jurisdiction was conferred by criminal statutes, and is now conferred to the aforementioned statutes.

Pro Se Liberal Construction

A pro se prisoner's conplaint is to be liberally construed, as Uncounseled. Defendant Williams should be afforded an opportunity to offer proof, unless it appears beyond a doubt that

he cannot prover a set of facts in support of his claim,
which would entitle him to relief. **Jourdon v. Jabe**, 951 F.2d
108, 110 (6th Cir.1991) (citing **Haines v. Kerner**, 404 US 519,
520-21 (1972)).

The question here is whether defendant William's complaint,
if liberally construed, establishes that there exists a set of
facts to support his claims, which would entitle him to re-
lief.

In evaluating this question, the federal district court is
obligated to accept defendant's allegations as true. **Estelle
v. Gamble**, 429 US 97, 100 (1976), which of course is the Sup-
reme Court law of the land, the _ultimate_ federal authority.

Statement of The Case

Defendant Demarco Williams ('defendant') was indicted on
September 16, 1999, in a Second Superseding Indictment which
charged him with kidnapping and carjacking in violation of
18 U.S.C. §§ 2, 1201(2)(1) and 2119. **R72.**

Trial on the two charges began March 27, 2000. 3/27/00 Tr.
On the morning of the second day of trial, March 28, 2000, de-
fendant Williams pled guilty without an agreement to both co-
unts of the Second Superseding Indictment. 3/28/00 Tr.;R.**100.**

On August 28, 2000, the district court issued the judgment
order which sentenced defendant Williams to a period of im-
prisonment of **315** months, five years of supervised release,a
fine of $5000, and a special assessment of $200. R.**112.**

- 2 -

Statement of Facts

**The Offense Conduct**

The offenses of conviction, kidnapping and carjacking, arose
out of what is considered a terrifying and brutal occurrence
on March 13, 1998 that began on the south side of Chicago.1/
That morning, two individuals set out to get a car. R.113 at
Govt's Vers.;3/27/00 Tr. 13-15. Specifically, the defendant,
wanted a car and recruited his companion, Nathan Howard, to
help him. Id. While searching for a car, defendant and Howard
spotted an elderly woman driving in an alley. That seventy-one
year old woman, Mary Holmes, drove her 1995 white Chevy Cor-
sica into her garage. While she was still in the car locking
"the Club" on her steering wheel, the two men enterd her gar-
age.Id. The man that Mrs. Holmes described as "the one with
the braids" (namely Howard), pointed a gun at her through the
driver's door window and told her to unlock the Club and get
out of the car.Id. When Mrs. Holmes did so, the two men duct-
taped her around her body and mouth and put her in the trunk
of her car.Id.

The men then drove Mrs. Holmes to rural Westville, Indiana,
and found a secluded area to stop. R.13 at Govt's Vers.;3/27/
00 Tr. 15-17. During the drive, Mrs. Holmes was albe to remove
some of the tape by twisting and turning her body.Id. Once in
Indiana, the men opened the car trunk, and the second man, who
Mrs. Holmes described as "the one without the braids," told
her: "this is where we brought you to kill you."Id. They then

- 3 -

1 It should be noted that defendant Howard was the second cul-
prit, who today has yet to be charged in his role of the off-
ense.

lifted Mrs. Holmes out of the trunk and duct-taped her again.Id. They dumped her in an icy and snowy drainage ditch- and Howard hit her repeatedly about the head.Id.

During this violent episode,a local retired couple, drove by the area twice. R.113 Govt's Vers.:3/27/00 Tr.17-19, 27-40, 42-60. As they drove on the road by the ditch the first time, They noticed the white Chevrolet with Illinois plates and the two men.Id. The driver also stated that he saw one of the two men standing on the ice over a body holding a red piece of pipe. Id. After driving by the scene, the couple turned their car around and passed the ditch again.Id. This time, one of the men approached the passing vehicle and asked for help, as the Chevrolet was stuck. The couple continued driving without stopping. 2/

Procedural Background

Defendant Demarco Williams was first indicted in this case on May 28, 1998 for carjacking in violation of 18 U.S.C. §§2 and 2119. R.15. another individual, Nathan Howard, was also charged along with defendant in the original indictment, as well as the first Superseding Indictment which added the ch- arge of kidnapping, in violation of 18 U.S.C §§ 2 and 1201(a) (1). R.15, 33. Defendant initally agreed to cooperate against Howard and pled guilty on February 16, 1999, pursuant to a pl- ea agreement requiring Williams' cooperation. R. 46. Defendant later changed his mind about cooperating, and on June 30, 1999,

-4 -

2 Defendant can only rely on the version of events described by the government,as it is clear that this retired couple sim- ply did nothing,as the record indicates that the couple did not contact police,which would have given credence to these alleged facts. Furthermore,the record will support that it was a UPS driver who spotted the victim,and the car was not reported stolen or located until some two weeks later. It should be noted that the car once located had the same plates,which supports a case of sloppy police work.

the court revoked defendant's plea agreement at the
government's request. R. 55,56. The court subsequently dis-
missed the kidnapping and carjacking charges against Howard
at the government's request. R. 68.

Defendant William's was subsequently indicted on September
16, 1999 in a Second Superseding Indictment which charged him
with kidnapping and carjacking in violation of 18 U.S.C. §§2,
1201(a)(1) and 2119. R.72. Trial on those two charges began on
March 27, 2000. 3/20/00 Tr. The first day of trial included op-
ening statements and the testimony of three witnesses who test-
ified in person, and one witness whose testimony was admitted
via stipulation. 3/27/00 Tr. On the morning of the second day
of trial, March 28, 2000, defendant pled guilty without an
agreement to both counts of the Second Superseding Indictment.
R.100.

Prior to sentencing, the Probation Office issued the Final
Presentence Investigation Report (the"PSR"). The PSR set forth
the applicable guideline calculations, which included offense
level enhancements for vulnerable victim and permanent/life
threatening injury. R.113.. On August 9, 2000, defendant filed
a Position Paper as to Sentencing which incorporated a motion
for a downward departure based on diminished capacity and an
objection to the PSR, which denied him any reduction for ac-
ceptance of responsibility. R. 105. Defendant William's posi-
tion paper raised no objection to the enhancements for vulner-
able victim and permanent/life threatening injury. R.105.

As set forth in the PSR, the Probation officer determined
that defendant's offense level was 39 and his criminal his-
tory category was I. R. 113. Defendant's guideline range was
therefore 262-327 months. R.113. At defendant's sentencing held

August 10, the court identified the disputed issues bet-
ween both parties, and addressed on ly the downward departure
motion, without stipulating to the acceptance of responsibility
or the diminished capacity claims. 3/ After the argument on
this issue, the Court asked defense counsel whether there were
any other disputed legal issues, and defense counsel simply
capitulated by responding, "I will forbear,Judge." 8/10/00Tr.20.

The court then asked the defendant, "Okay, Mr. Williams, is
there anything that you would like to say?" Defendant responded,
"No, your Honor." The court then sentenced the defendant to a
period of imprisonment of 327 months, five years of supervised
release, a fine of $5000, and a special assessment of $200. 8/
10/00. Tr.22-24. The district court then concluded the hearing
by advising the defendant of his right to appeal and agreeing
to recommend a particular prison facility. 8/10/00 Tr.26-27.

However, after the hearing was concluded, the district court
sua sponte reopened the sentencing hearing. Specifically, on
August 11, 2000, the parties appeared again before the dist-
rict court at the judge's request. R. 107. The judge advised
the parties that she was considering a reduction in the term of
imprisonment because "[a]fter the sentencing yesterday, I re-
viewed the presentence report" and realized that it had "slip
ped my mind" during the sentencing hearing that the defendant

- 6 -

---

3Defendant believes that the court failed to consider the dim-
inished capacity issue,after knowing that the court's psychia-
trist concluded that, at the time of the offense,Defendant
suffered from "cannabis dependence", "borderline intellectual
functioning", "Personality disorder not otherwise specified
with anti-social narcissistic, avoidant and self-defeating fea-
tures" and "Learning disorders". R. 96. And while defendant
"likely understood" that the crimes with which he was charged
constituted illegal acts; the psychiatrist believed that it
was "possible that defendant participated in the alleged of-
fense without thinking through the future consequences of his
actions to himself and the victim. R.96

"had never previously. . . been inc arcerated or actually been in serious trouble with the law." 8/11/00 Tr. **2-3**. The government objected and argued that, even though no written judgment had been issued, the district court no longer had jurisdiction to make such a modification to the sentence imposed the prior day. 8/11/00 Tr.**3**. Specifically, the government argued that the district court's reason for considering a reduction to defendant's sentence (that she fialed to remember and take into account defendant's lack of a criminal history) was outside the scope of Rule 35(c). 8/11/00 Tr. **5-7**. However, the district court decided that she retained the authority to modify the prior oral sentence and reduced the defendant's sentence of imprisonment by 12 months to 315 months. 8/18/00 Tr. **7-8**.

### A. ARGUMENT I:

Trial Counsel's Failure To Object To Enhancements Rendered Himself Ineffective and "Open Plea" Invalid.

In determing whether to allow withdrawal of a guilty plea, the district court may consider any assertions of legal innocence, the amount of time between the plea and the motion to withdraw, and the prejucdice to the government in granting a motion. **U.S. v. Mugan**, 441 F.3d 622,630 (8th Cir.2006). A defendant who seeks to withdraw his plea bears the burden of showing that there are valid grounds for withdrawal. **U.S.v. Schmidt**, 3373 F.3d 100 (2d Cir.2004).

The court must employ a "totality of the circumstances" analysis to determine whether any Rule 11 violation would have likely affected [the defendant's] willingness to plead guilty to a charge." See F.R.Crim.P. 11(h) **Vonn**, 535 U.S. at 58-59, 63, 122 S.Ct. 1043; **U.S. v. Martinez**, 289 F.3d 1023,1029(7th Cir.2002).

A defendant must enter into a plea agreement and waiver knowingly and voluntarily for these agreements to be valid. See **DeRoo**, 233 F.3d at 923; **Morrison**, 171 F.3d at 568; **Michelson**, 141 F.3d at 871. This same standard the Supreme Court has required for all guilty pleas. See **U.S. v. Gray**, 152 F.3d 816,819 (8th Cir.1998) (citing **Parke v. Raley**, 506 U.S. at 28, 113 S.Ct. 517.

A review of the record will show that according to the Presentence Investigation Report "PSR") defendant was enhanced Six levels. "[P]ursuant to §2B3.1(b)(2)(b), if a firearm was used in the commission of the offense, increase by Six (6) levels. Here, the record reveals that it was in fact defendant's <u>unindicted accompliance</u> who forced  the victim from her car by standing next to her car and pointing the gun to her head. It was in fact the accompliance who used the firearm to threaten the victim's life and force her from her car. But the government seeks to punish defendant for acts committed by his co-defendant, and it was the court who allows it. (See ("PSR").

Defendant's position is that counsel sat on his hands and allowed the "otherwise used" doctrine to be applicable by the government, when nowhere in the record does it show that defendant pointed a cocked gun at the victim's head, held the gun in his hand while forcing the victim from her car, or aimed the weapon directly at the victim while giving orders. See **U.S. v. LaFortune**, 192 F.3d 157, cert. denied, 528 U.S. 1129, 145 L.Ed.2d 837, 120 S.Ct. 966 (2000) ("[F]irearm was 'otherwise used' under § 2B3.1 where carjacking victim was grabbed by her hair, had a gun stuck in her face and was told by suspect that he was going to kill her; threat of death to victim in conjunction with brandishing a firearm constitutes "otherwise using" firearm. Id. at 405.

A defendant must enter a plea agreement and waiver knowingly and voluntarily for these agreements to be valid. **DeRoo**, 233 F.3d at 923; **Morrison**, 171 F.3d at 568; and **Michelson**, 141 F.3d at 871. This same standard applies to all pleas, according to the Supreme Court's decisions in **U.S. v. Gray**, 152 F.3d 816(8th Cir. 1998) and **Parke v. Raley**, 506 U.S. at 28, 113 S.Ct. 517.

Title 28, U.S.C. §2255 provides a post conviction remedy for federal prisoners similar to the historic writ of habeas corpus available to state prisoners that is now codified in §2254.Pursuant to §2255, a federal prisoner in custody "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on the basis that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorizaed by law, or is otherwise subject to collateral attack. .. " 28 USC §2255.

In §2255 proceedings, the Supreme Court has recognized the rule of procedural default or "exhaustion" of federal remedies. **Reed v. Farley**, 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed 2d 277 (1994). Generally, the rule bars the presentation of a claim through a writ of habeas corpus where the petitioner failed properly to raise the claim on direct review. Id. If the claim has not been presented on direct review, the procedural bar may be waived only if the petitioner establishes (1)"cause" for the waiver and shows "actual prejudice" from the alleged violations or (2) "actual innocence". **Bousley v. U.S.**, 523 US 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998); **Rosario v. U.S.**, 164 F.3d 729, 732 (2d Cir.1998); See also **Smith v. Murray**, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667-68, 91 L.Ed.2d

434 (1986); **Murray v. Carrier**, 478,485,106 S.Ct. 2639,
2643-44, 91 L.Ed.2d 397(1986);**Wainwright v. Sykes**, 433 US
72,87,97 S.Ct.2497,2506-07,53 L.Ed.2d 594(1977)**Douglas v.**
**U.S.**, 13 F.3d 43,46(2d Cir.1993).

Further, the traditional procedural default rule generally
does not apply to ineffective assistance of counsel calims.**Ma**
**ssaro v. U.S.**, 538 U.S. 538, 123 S.Ct. 1690, 155 L.Ed.2d 714
(2003). In **Massaro**, the Supreme Court held that ineffective
assistance claims are appropriately litigated in the context
of a collateral challenge in the district court and not on
direct appeal. Id at 504-05, 123 S.Ct. 1690; accord **U.S. v.**
**Dominguez Benitez**, 542 U.S. 74, 83 ¶9, 124 S.Ct. 2333, 159 L.
Ed.2d 157 (2004). This is so because the trial record is not
developed precisely for the object of litigating the ineffect-
ive assistance claim, but instead is devoted to issues of gu-
ilt or lack of guilt. **Massaro**, 538 U.S. at 504-05, 123 S.Ct.
1690, 155 L.Ed.2d 714.

A direct appeal of the issues brought in this collateral
challenge would have been unnecessary for several reasons.
First, defendant's claim includes ineffective assistance of
counsel, which is properly brought before this court for the
first time on collateral review to develop the factual record.
Second, defendant was not aware that he had been enhanced for
a gun possession, he never possesed until he received his dis-
covery materials and presentence report until after the Court
of Appeals decision, some several years later.

Although the record will show that defendant entered an open
plea, he contends that any waiver of collateral attack rights
in a plea agreement does not foreclose an attack on the valid-
ity of the process by which the waiver has been produced, Here
the open plea agreement.

Where a defendant claims a violation of Rule 11 or the in-
effectiveness of trial counsel, the Seventh Circuit assurdly
has stated that a defendant is not barred under the terms of
the plea agreement from bringing a petition to vacate the con-
viction based on the legal shortcomings of the process in wh-
ich the waiver was obtained, or lackthereof.

Accordingly, the court can address "the merits of [the]
petition notwithstanding [the defendant's] general waiver of
the right to collaterally attack his conviction" along with
the alleged knowing and intellient waiver. **Bousley v. U.S.**,
523 U.S. 614 (citing **Brady**, 397 U.S. 742(1970).**4/**

## CONCLUSION

WHEREFORE, based upon all the records, files and proceeedings,
Defendant DeMarco Williams, respectfully moves for the entry of
an order granting a Six level reduction and for such other re-
lief deemed appropriate and just.

Executed this_____ day of_____, 2008.


By:_____
        **DeMarco Williams, Pro Se**
        USP-Marion
        P.O. Box 1000
        Marion, Il 62959


- 11 -

---

4 There are only two issues for discusson. The First, is defend-
ant being enhanced, and the Second, is the court's failure to
consider the deminished capacity discussed by the court's psy-
chiatirst anda the other psychological issues never addressed,
to the extent that the court reopened the sentencing hearing
on other factors.

United States District Court
Northern District of Illinois
Dirkson Federal Building
Room 2722
219 South Dearborn Street
Chicago, Illinois 60604


Re: **U.S.A. V. Williams**
    Case No. 98 CR 208


Dear Clerk:

 Enclosed for filing please find the following: Petition to Va-
cate at 28 USC §2255 or alternativley FRCivP 60(b)(6). Should
this office need further information, please feel free to con-
tact me at the below address. Thanking you in advance!


       Dated This_____ day of_____, 200____.




Respectfully submitted,



**DeMarco Williams**, Pro Se
USP-Marion
P.O. Box 1000
Marion, Il 62959


Cc: **Files**